UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANTIONO WATKINS,

Plaintiff,

v.

LEE FELSTEAD,

Defendant.

CIVIL NO. 01-733 (MJD/JMM)

REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Federal Prison Camp in Duluth, Minnesota, ("FPC-Duluth"), has filed a Complaint seeking relief for alleged violations of his federal constitutional rights.[1] Defendant Lee Felstead, a correctional official at FPC-Duluth, has filed a motion asking to have the Complaint dismissed or, in the alternative, to have summary judgment granted in his favor pursuant to Fed. R. Civ. P. 56.[2]

The matter has been referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For the reasons discussed below, it will be recommended that Defendant's Motion For Summary Judgment be GRANTED, and that the action be dismissed with prejudice.

---

[1] Although Plaintiff's pleading is entitled "Complaint For Violation Of Civil Rights Under 42 U.S.C. Section 1983," it will be construed as an action brought under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), because Plaintiff is a federal prisoner attempting to sue a federal employee. See Christian v. Crawford, 907 F.2d 808, 810 (8th Cir. 1990) ("[a]n action under Bivens is almost identical to an action under § 1983, except that the former is maintained against federal officials while the latter is against state officials").

[2] The Complaint actually names two parties as Defendants -- Felstead and "United States Federal Bureau of Prisons." However, Plaintiff's claims against the Bureau of Prisons have already been dismissed, (see Order dated July 27, 2001; [Docket No. 7]), so Felstead is now the only remaining Defendant in the case.

FILED FEB 19 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

## I. BACKGROUND

Plaintiff's claims against Defendant Felstead are based on three incidents that allegedly occurred at FPC-Duluth in December 2000 and January 2001. Plaintiff initially alleges that on December 17, 2000, Defendant "intentionally and willfully push[ed] Plaintiff, while Plaintiff was standing in line at the mess hall." (Complaint, [Docket No. 1], "Statement of Facts," ¶ 1.) The second incident described in the Complaint purportedly occurred on January 15, 2001. That time, it is alleged, Defendant "intentionally and wilfully, dropped his shoulder and assault[ed] Plaintiff by colliding with Plaintiff's body." (Id., ¶ 2.) Lastly, the Complaint alleges that on January 27, 2001, Defendant "intentionally and wilfully assault[ed] Plaintiff by striking Plaintiff in the shoulder causing sever[e] bodily injury to Plaintiff's shoulder and back." (Id., ¶ 3.)

Plaintiff has broadly alleged that as a result of the three "assaults" by Defendant that are described in his Complaint, he "has suffered sever[e] mental and physical harm and has and continues to seek medical treatment for his injuries." (Id., ¶ 4.) Plaintiff is asking the Court to award him "compensation for [his] personal injuries in excess of $100,000," and to impose "administrative sanction[s] against Defendant Felstead including termination of employment." (Complaint, § V.)

Defendant's current motion to dismiss or for summary judgment is supported by several declarations and exhibits, including Plaintiff's prison medical records. Those evidentiary submissions show that Plaintiff did not seek any medical attention on December 17, 2000 -- the date when the first incident described in the Complaint allegedly occurred. Nor did Plaintiff seek any medical attention at any other time during the remaining two weeks of December 2000. (Defendant's "Memorandum In Support;" Declaration of Bruce Barton, [Docket No. 17; Exhibit 1], ¶ 4.) Plaintiff visited the prison

medical department on January 9, 2001, because a prison official, "the Chief Correctional Supervisor," directed him to go there. Plaintiff reported that he had some pain in his neck and shoulder on the right side, but he did not know what had caused his pain. A physician's assistant who examined Plaintiff suggested that he might want to use some "moist heat compresses," but the medical report specifically states that no other treatment was required. (Barton Declaration, Attachments A and B.)

The medical records further indicate that Plaintiff did not seek any medical care on either January 15, 2001, or January 27, 2001 – the dates of the second and third alleged assaults. The next time Plaintiff went to the prison medical department after those last two alleged assaults apparently was on March 5, 2001, when he was seen in connection with some type of digestive problem. At that time, Plaintiff did not complain about any injury associated with any assault, nor did he mention any symptoms that might have been related to an assault. (Barton Declaration, ¶ 5 and Attachment C.)

It was not until April 13, 2001, that Plaintiff first mentioned to prison health care providers that he had been "bumped by another person." (Id., ¶ 6 and Attachment D.) (Plaintiff's Complaint is dated April 11, 2001 -- two days before he first sought medical attention for his allegedly "severe" physical injuries.) Although Plaintiff was again seeking medical attention for right shoulder pain, the medical records do not clearly indicate that his shoulder pain was caused by any of the alleged assaults by Defendant. Furthermore, there is no indication that Plaintiff received any medical treatment for his alleged pain, other than a recommendation that he might want to try some "Capsacin [sic] Cream." (Id.) He was told to return for further care in two or three weeks if his pain persisted, but he never went back to the medical department again. (Id.)

Plaintiff's medical records also indicate that he visited the prison medical department in November 2000, about a month before the first alleged assault by Defendant, with complaints of shoulder and neck pain. Plaintiff was given a muscle relaxer, and advised to apply heat to the sore areas. A physician's assistant at FPC-Duluth has opined that Plaintiff's complaints of neck and shoulder pain in April 2001, (after the alleged assaults), are consistent with the pain he described in November 2000, (before the alleged assaults). (Barton Declaration, ¶s 7-8 and Attachment E.)

In addition to the medical evidence outlined above, Defendant Felstead has also submitted two of his own declarations in support of his present motion. (Defendant's "Memorandum In Support;" Declaration of Lee Felstead and Supplemental Declaration of Lee Felstead, [Docket No. 17; Exhibits 3 and 4].) In those declarations, Defendant states that (a) he did not push Plaintiff on December 17, 2000, and he does not recall having any other contact with Plaintiff on that date; (b) he did not collide with Plaintiff on January 15, 2001, and he does not recall having any other contact with Plaintiff on that date; and (c) he was on sick leave January 27, 2001, and he was therefore not working at the prison on the date of the third alleged assault. (Felstead Declaration, ¶s 4-5.) Defendant further states that in December 2000 and January 2001, (i.e., at the time of the alleged assaults), he did not know that Plaintiff had been suffering from shoulder pain since at least November 2000. (Supplemental Felstead Declaration, ¶ 3.)

Plaintiff filed a two-page opposition to Defendant's motion to dismiss or for summary judgment, which presents nothing more than a conclusory assertion that Defendant's motion should be denied. Plaintiff has offered no evidentiary submissions of any kind.

## II. STANDARD OF REVIEW

As previously noted, Defendant's current motion has been presented as a motion to dismiss or, in the alternative, for summary judgment. A motion to dismiss may be made for "failure to state a claim upon which relief can be granted" and requires a court to review only the pleadings to determine whether the plaintiff has a viable claim. See Fed. R. Civ. P. 12(b)(6). However, when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Id.; see also Buck v. F.D.I.C., 75 F.3d 1285, 1288 & n.3 (8th Cir. 1996). In this case, evidence from outside the pleadings has been submitted, and has been considered by the Court. Defendant's motion must therefore be treated as a summary judgment motion.[3]

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate if the materials submitted in support of the motion "show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The standards for considering a Motion for Summary Judgment have their foundation in the provisions of Rule 56 of the Federal Rules of Civil Procedure, as interpreted in a trilogy of cases decided by the Supreme Court in 1986. In one of those cases, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court described the importance of the summary judgment procedure:

---

[3] Defendant's motion, on its face, fairly advised Plaintiff that he was seeking summary judgment, and the motion obviously relies on matters outside of the pleading. (Indeed, Defendant's evidentiary submissions were attached directly to his memorandum in support of the motion, [Docket No. 15].) It is evident, moreover, that Plaintiff actually knew that Defendant's motion included a request for summary judgment, because Plaintiff argued in his opposition to the motion that "summary judgment is not appropriate." It is therefore entirely proper to treat Defendant's pending motion as a summary judgment motion.

> "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."

On a Motion for Summary Judgment, the moving party has the initial burden of establishing the "material facts" and demonstrating that there is not a "genuine" dispute as to whether those material facts are true. Fed. R. Civ. P. 56(c). To defeat the motion, the opposing party must then establish that there is a "genuine" issue as to material facts. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e). If a motion for summary judgment is properly supported by affidavits or other evidence, the nonmoving party must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. Id. at 587; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988). Although the evidence is examined in the light most favorable to the non-moving party, the non-moving party may not rely on only mere allegations or denials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Lambert v. City of Dumas, 187 F.3d 931, 934-35 (8th Cir. 1999).

The moving party is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial. Celotex Corp., 477 U.S. at 322. No genuine issue of material fact

exists absent such foundation because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587. The Court considers the Motion for Summary Judgment based upon the material presented in connection with the Motion. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. The Court's inquiry should be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The Court is mindful that pro se pleadings should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); White v. Bond, 720 F.2d 1002, 1003 (8th Cir. 1983). Therefore, pro se pleadings are held to less stringent standards when challenged by motions to dismiss or for summary judgment. Haines, 404 U.S. at 520; Horsey v. Asher, 741 F.2d 209, 211 n.3 (8th Cir. 1984). Nonetheless, a pro se plaintiff's claim cannot survive a motion for summary judgment unless, in some form, he can fairly be said to have set forth specific facts demonstrating that there is a genuine issue for trial. Miller v. Solem, 728 F.2d 1020, 1023, (8th Cir.), cert. denied, 469 U.S. 841 (1984); Quam v. Minnehaha County Jail, 821 F.2d 522 (8th Cir. 1987).

## III. DISCUSSION

To sustain his current Bivens claim, (see footnote 1, supra), Plaintiff must show that Defendant violated his constitutional rights while acting under color of federal law. See Duffy v. Wolle, 123 F.3d 1026, 1033 (8th Cir. 1997) (in Bivens, "the Supreme Court recognized... an inherent cause of action for damages against federal actors for violations of federal constitutional rights"), cert. denied, 523 U.S. 1137 (1998). Although Plaintiff's present Complaint does not expressly identify the constitutional basis for his Bivens claim, it can reasonably be inferred that he is claiming that Defendant violated his Eighth Amendment rights by subjecting him to "cruel and unusual punishment."

It is well-settled that a federal prisoner can bring a Bivens Eighth Amendment claim against an individual federal correctional official who allegedly has used "excessive force" against him. To prevail on an excessive force claim, a prisoner-plaintiff must prove that the named defendant(s) caused an "'unnecessary and wanton infliction of pain.'" Hudson v. McMillian, 503 U.S. 1, 5 (1992), quoting Whitley v. Albers, 475 U.S. 312, 320 (1986).

It is important to recognize, however, that "[n]ot every malevolent touch by a prison guard gives rise to a federal cause of action." Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000). See also Hudson, 503 U.S. at 7, ("'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights'"), quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir.), cert. denied, 414 U.S. 1033 (1973). The plaintiff in an excessive force claim must show that the "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson, 503 U.S. at 8, quoting Wilson v. Seiter, 501 U.S. 294, 303 (1991). More specifically, the force used by the defendant must have been more than "de minimis."

Hudson, 503 U.S. at 9-10. The Eighth Amendment does not proscribe all uses of physical force, but only excessive uses of force.

To prove that the force used by a prison guard was "excessive" and therefore actionable under the Eighth Amendment, a prisoner-plaintiff must prove that he suffered some type of real injury. While the injury need not be significant, there must be some "actual injury." White v. Holmes, 21 F.3d 277, 281 (8th Cir. 1994); Cummings v. Malone, 995 F.2d 817, 822-23 (8th Cir. 1993). See also Jones, 207 F.3d at 495 ("[s]erious or permanent injury is not required to make out an Eighth Amendment claim... [but] [s]ome actual injury must be shown").

Defendant submitted Affidavits in support of its Motion for Summary Judgment. From the failure of Plaintiff to submit Affidavits, the Court may infer "plaintiffs' tacit acceptance of the completeness and accuracy" of the Affidavits and Exhibits filed by Defendants. Willmar Poultry Co. v. Morton-Norwich Prod., Inc., 520 F.2d 289, 297 (8th Cir. 1975), cert. denied, 424 U.S. 915 (1976). But even without this inference, we conclude that the Motion for Summary Judgment should be granted. Even when all of the evidence is viewed in a light most favorable to Plaintiff, no actual injury can be found. Plaintiff has alleged in his Complaint that he "has suffered sever[e] mental and physical harm and has and continues to seek medical treatment for his injuries," but the evidence of record plainly belies that assertion.

The record shows that Plaintiff did not seek any medical attention for any harm caused by the first alleged assault until January 9, 2001 -- more than three weeks after the date when that incident allegedly occurred. Moreover, it appears that the only reason he sought any medical attention after the first alleged assault was because

someone else, (namely the "Chief Correctional Supervisor"), suggested that he should. The medical records also indicate that when Plaintiff was asked what had happened to him, he said he "just pulled [some] tissue," and that he did not know how that had occurred. (Barton Declaration, Attachment A.) Plaintiff apparently was advised to use an ice pack and an anti-inflammatory medication ("Salsalate"), (id.), but there is no evidence showing whether he followed that advice.

The record further indicates that Plaintiff waited nearly three months before seeking any medical attention for the two assaults that allegedly occurred in January 2001. Furthermore, the "discomfort" in the right shoulder area that he reported at that time, i.e., on April 13, 2001, appears to be remarkably similar to the "sore" and "stiff" right shoulder for which he sought medical treatment on November 18, 2000 – a month before the first alleged assault. (Barton Declaration, Attachments D and E.) On April 13, 2001, Plaintiff was given a cream to apply, and he was advised to return if his symptoms persisted. Evidently, the "discomfort" that Plaintiff was experiencing in April 2001 was short-lived, because his medical records indicate that he never came back to the prison medical department. (Barton Declaration, ¶ 6.)

Plaintiff has presented no evidence to support his self-serving and conclusory allegation that he suffered severe physical harm; while Defendant, on the other hand, has offered substantial credible evidence to rebut that allegation. Applying the rules governing summary judgment motions to the current evidentiary record, the Court finds that there is no genuine issue of material fact to be decided here, because no reasonable juror could find that Plaintiff has suffered an "actual injury" as that term has been defined by relevant case law. Looking at the record as a whole, the Court concludes, as a matter of law, that Plaintiff has not suffered the type of "actual injury" that is required to sustain an Eighth

Amendment excessive force cause of action.[4] It will therefore be recommended that Defendant's motion for summary judgment be granted, and that this action be dismissed with prejudice.

**IV. RECOMMENDATION**

For the foregoing reasons, it is hereby recommended that:

1. Defendant's motion to dismiss or for summary judgment (Docket No. 14) be **GRANTED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Dated: February 19, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before March 6, 2002 written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

[4] In reaching this conclusion, the Court has not ignored Plaintiff's subjective allegations of "pain." Moreover, the Court recognizes that an Eighth Amendment claim could be based on pain alone, (i.e., without any other identifiable physical injury), if the pain were sufficiently severe. See Hickey v. Reeder, 12 F.3d 754, 757 (8th Cir. 1993) (suggesting that extreme pain, such as that which might be caused by a stun gun for example, could give rise to an actionable Eighth Amendment claim even in the absence of a demonstrable injury"). Here, however, there is no evidence suggesting that Plaintiff suffered the serious type of pain that could support an Eighth Amendment claim without any demonstrable physical injury. Instead, the record clearly shows that he suffered only the de minimis type of pain that has no constitutional significance. See Jones 207 F.3d at 495-96 (rejecting prisoner's excessive force claim based on subjective complaints of pain where he failed to produce "any evidence [that] he suffered to the extent or duration we found objectionable in Hickey").